**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| ENVISION HEALTHCARE CORPORATION, <br><br>                Plaintiff, <br><br>     vs. <br><br> UNITED HEALTHCARE SERVICES, INC. and UNITED HEALTHCARE INSURANCE COMPANY, <br><br>             Defendants. | **Case No. 3:22-cv-00693** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................ 2

LEGAL STANDARD .................................................................................................... 4

ARGUMENT ................................................................................................................. 5

    I.       Envision fails to state a claim under RICO .................................................. 5

          A.      Envision fails to allege a distinct enterprise separate from the defendants or the alleged predicate acts. ................................. 6

          B.      Envision fails to allege predicate acts of racketeering. ............................ 9

          C.      Envision fails to allege causation. .......................................................... 11

    II.     Envision's claim for RICO conspiracy must also be dismissed. .......................... 12

    III.    Envision's complaint fails to state a claim for fraud. ........................................... 12

    IV.   Envision's claim under the Tennessee Prompt Pay Act must be dismissed because the law does not provide a private cause of action. ................................. 14

    V.     Envision's civil conspiracy claim fails as a matter of law. .................................... 16

          A.      There can be no conspiracy without an actionable underlying tort. ......... 16

          B.      United cannot conspire with itself. .......................................................... 17

    VI.   Envision's unjust enrichment and quantum meruit claims must be dismissed because Envision did not confer any benefits on United. ................... 18

    VII.  Envision's breach of implied-in-fact contract claim fails. .................................... 20

    VIII. Envision's state law claim based on assignment must be dismissed as preempted by ERISA. ........................................................................................ 22

CONCLUSION ............................................................................................................ 23

i

**Cases**

*Advanced Health-Care Services, Inc. v. Radford Community Hosp.*,
    910 F.2d 139 (4th Cir. 1990) ...................................................................................17

*Adventist Health Sys./Sunbelt Inc. v. Medical Sav. Ins. Co.*,
    2004 WL 6225293 (M.D. Fla. Mar. 8, 2004) .......................................................19

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Assoc.*,
    176 F.3d 315 (6th Cir. 1999) ...................................................................................9

*Affordable Construction Services, Inc. v. Auto-Owners Insurance Company*,
    621 S.W.3d 693 (Tenn. 2021)................................................................................14

*Afshari v. Montana Black Gold*,
    No. 20-5362, 2020 WL 9217980 (6th Cir. Dec. 17, 2020)......................................7

*Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*,
    506 F. Supp. 3d 425 (N.D. Tex. 2020) ..................................................................19

*Begala v. PNC Bank, Ohio, Nat. Ass'n*,
    214 F.3d 776 (6th Cir. 2000) ...............................................................................7, 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................4

*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
    501 F.3d 493 (6th Cir. 2007) ....................................................................................4

*Brannon v. Boatmen's First Nat. Bank of Oklahoma*,
    153 F.3d 1144 (10th Cir. 1998) ...........................................................................7, 20

*Bristol Anesthesia Services, P.C. v. Carilion Clinic Medicare Resources, LLC*,
    2018 WL 1512932 (E.D. Tenn. March 26, 2018)...................................................20

*Brown v. Knoxville HMA Holdings*,
    LLC, 447 F. Supp. 3d 630 (M.D. Tenn. 2020) .....................................................9, 12

*Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*,
    329 F.3d 923 (7th Cir. 2003) ...................................................................................7

*Cannon v. Citicorp Credit Services, Inc.*,
    2014 WL 1267279 (E.D. Tenn. March 26, 2014).................................................21

*Castelli v. Lien,*
    910 S.W.2d 420 (Tenn. Ct. App. 1995) ...................................................................18

*In re ClassicStar Mare Lease Litigation,*
    727 F.3d 473, 492 (6th Cir. 2013) ........................................................................7

*Coffey v. Foamex L.P.,*
    2 F.3d 157 (6th Cir. 1993) ...................................................................................12

*Cole v. Caruso,*
    2018 WL 1391625 (Tenn. Ct. App. March 20, 2018) ..........................................18

*Conner v. Hardee's Food Systems, Inc.,*
    65 Fed. Appx. 19 (6th Cir. 2003)..........................................................................20

*In re Envision Healthcare Corporation Securities Litigation,*
    2019 WL 6168254 (M.D. Tenn. November 19, 2019) ...........................................1

*Faber v. Ciox Health,*
    LLC, 331 F.Supp.3d 767 (W.D. Tenn. 2018) ............................................20, 21, 22

*Frank v. D'Ambrosi,*
    4 F.3d 1378 (6th Cir. 1993) ...................................................................................8

*Fremont Emergency Services, LTD. v. UnitedHealthcare Insurance Company et al.,*
    No. 2:22-cv-01118 (D. Nev. July 13, 2022) ..........................................................2

*Gobeille v. Liberty Mut. Ins. Co.,*
    136 S. Ct. 936 (2016).............................................................................................22

*Greene v. Brown & Williamson Tobacco Corp.,*
    72 F.Supp.2d 882 (W.D. Tenn. 1999)...................................................................16

*Gucci v. Gucci Shops,*
    Inc., 651 F. Supp. 194, 197 (S.D.N.Y.1986) ........................................................17

*GVB MD v. Aetna Health Inc.,*
    2019 WL 6130825 (S.D. Fla. November 19, 2019)...............................................20

*HDC, LLC v. City of Ann Arbor,*
    675 F.3d 608 (6th Cir. 2012) ..................................................................................4

*Heinrich v. Waiting Angels Adoption Servs.,*
    668 F.3d 393 (6th Cir. 2012) ...................................................................10, 11, 12

*Huang v. Presbyterian Church (U.S.A.),*
    346 F. Supp. 3d 961 (E.D. Ky. 2018) ...................................................................11

iii

*Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*,
719 F.3d 498 (6th Cir. 2013) ...................................................................................4

*Jack Tyler Eng'g Co. v. Colfax Corp.*,
No. 10-cv-2373, 2011 WL 6372827 (W.D. Tenn. Dec. 20, 2011) ...................................12, 13

*K.B. by and through Qassis v. Methodist Healthcare - Memphis Hosps.*,
929 F.3d 795 (6th Cir. 2019) .................................................................................22

*Kearney v. Blue Cross and Blue Shield of North Carolina*,
233 F.Supp.3d 496 (M.D. N.C. 2017) .......................................................................16

*Kincaid v. SouthTrust Bank*,
221 S.W.3d 32 (Tenn. Ct. App. 2006) ......................................................................17

*Lane v. Becker*,
334 S.W.3d 756 (Tenn. Ct. App. 2010) .....................................................................16

*Mac'Kie v. Wal-Mart Stores*,
943 F. Supp. 916 (E.D. Tenn. 1996) .........................................................................21

*MACTEC, Inc. v. Bechtel Jacobs Co.*,
LLC, 2007 WL 1891244 (E.D. Tenn. June 28, 2007) .......................................................18

*In re Managed Care Litigation*,
298 F.Supp.2d 1259 (S.D. Fla. 2003) .......................................................................14

*U.S. ex rel. Marlar v. BWXT Y–12, LLC*,
525 F.3d 439 (6th Cir. 2008) ...................................................................................5

*Moon v. Harrison Piping Supply*,
465 F.3d 719 (6th Cir. 2006) ...................................................................................6

*Moore v. Auto Club Services*,
2022 WL 2865840 (E.D. Mich. July 20, 2022) ............................................................17

*Mountain View Surgical Center v. Cigna Health Corp.*,
2015 WL 519066 (C.D. Cal. February 9, 2015) ...........................................................19

*Patel v. Aetna*,
No. 2:17-cv-78, 2018 WL 6574734 (S.D. Ohio Dec. 12, 2018)...........................................19

*Pineda Transportation, LLC v. FleetOne Factoring, LLC*,
2018 WL 2137760 (M.D. Tenn. May 9, 2018)...............................................................8

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
214 F. Supp. 3d 808 (N.D. Cal. 2016) ......................................................................10

iv

*Priority Waste Service, Inc. v. Santek Environmental, LLC*,
    2021 WL 2652703 (Tenn. Ct. App. June 28, 2021) ...........................................14

*Productive MD, LLC v. Aetna Health, Inc.*,
    969 F.Supp.2d 901 (M.D. Tenn. 2013)...........................................................23

*Shields v. UNUMProvident Corp.*,
    415 F. App'x 686 (6th Cir. 2011) ...............................................................8, 9

*Shipwash v. United Airlines, Inc.*,
    28 F.Supp.3d 740 (E.D. Tenn. 2014)........................................................17, 18

*SLF No. 1, LLC v. United Healthcare Services Inc.*,
    2014 WL 518222 (M.D. Tenn. February 7, 2014)..........................................23

*Tennessee Extracts, LLC v. TGC Systems, LLC*,
    2022 WL 2111350 (M.D. Tenn. June 10, 2022)................................................5

*Thompson v. Hensley*,
    136 S.W.3d 925 (Tenn. Ct. App. 2003) ........................................................20

*Tinsley v. Gen. Motors Corp.*,
    227 F.3d 700 (6th Cir. 2000) .....................................................................22

*TJM 64, Inc. v. Harris*,
    526 F.Supp.3d 331 (W.D. Tenn. 2021)..........................................................21

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*,
    552 F.3d 430 (6th Cir. 2008) .....................................................................17

*Trau-Med of America, Inc. v. Allstate Ins. Co.*,
    71 S.W.3d 691 (Tenn. 2002)......................................................................17

*Travelers Indem. Co. of Connecticut v. Losco Group, Inc.*,
    150 F.Supp.2d 556 (S.D.N.Y. 2001)............................................................19

*United States v. Sadler*,
    750 F.3d 585 (6th Cir. 2014) .....................................................................11

*United States v. Turkette*,
    452 U.S. 576 (1981)...............................................................................6, 8

*UnitedHealthcare Insurance Company, et al. v. Envision Healthcare Corporation, et al.*,
    No. 22-cv-00697 (M.D. Tenn. Sept. 9, 2022)............................................2, 3, 5

*Valley Health System LLC v. Aetna Health*, *Inc.*,
    2016 WL 3536519 (D. Nev. June 28, 2016)...................................................19

*Williams v. SunTrust Mortg., Inc.*,
    No. 3:12-CV-477, 2013 WL 1209623 (E.D. Tenn. Mar. 25, 2013) ......................................13

**Statutes**

18 U.S.C. § 96.................................................................................................................... *passim*

18 U.S.C. §§ 1341, 1343 ........................................................................................................10

18 U.S.C. § 1952 .....................................................................................................................9

18 U.S.C. § 1962(c) .............................................................................................................6, 7

29 U.S.C. § 1001, *et seq*.................................................................................................22, 23

31 U.S.C. § 3901 ............................................................................................................ *passim*

N.C. Gen. Stat. § 58–3–225 .............................................................................................15, 16

Tenn. Code § 66-34-101, *et. seq.* ...............................................................................14, 15, 23

**Other Authorities**

De Lombaerde, The Nashville Post, *Envision finalizes $31M DOJ settlement*
    (December 19, 2017), Available at: https://www.nashvillepost.com/envision-
    finalizes-31m-doj-settlement/article_807b9230-6257-54c4-bb19-
    c14e61353a86.html ........................................................................................................2

Fed. R. Civ. P. 9(b) .................................................................................................4, 10, 12, 13

Fed. R. Civ. P. 12(b)(6).............................................................................................................4

Health Policy, *Private equity investment as a divining rod for market failure:*
    *Policy responses to harmful physician practice acquisitions* (October 5,
    2021), Available at: https://www.brookings.edu/essay/private-equity-
    investment-as-a-divining-rod-for-market-failure-policy-responses-to-harmful-
    physician-practice-acquisitions/.....................................................................................2

https://www.documentcloud.org/documents/4059832-Claire-McCaskill-Envision-
    Letter .............................................................................................................................2

Michael Flynn, *The Check isn't in the Mail: The Inadequacy of State Prompt Pay*
    *Statutes,* 10 DePaul J. Health Care L. 397, 406 (2007) ..........................................15

# INTRODUCTION

Envision Healthcare Corporation ("Envision") is a private equity backed conglomerate that controls thousands of emergency rooms nationwide through a web of affiliated medical groups. Envision has been the subject of significant scrutiny with regard to its billing practices with its own shareholders, insurers, doctors, patients, and even Congress ringing alarm bells about Envision's fraudulent efforts to maximize the reimbursements it receives from healthcare companies like United. *See e. g. In re Envision Healthcare Corporation Securities Litigation*, 2019 WL 6168254, at *2-6 (M.D. Tenn. November 19, 2019). United HealthCare Services, Inc. and United Healthcare Insurance Company (collectively, "United"), have analyzed tens of thousands of claims for reimbursement submitted by Envision on behalf of its affiliated medical groups submitted since the beginning of 2021 and found that Envision has engaged in a classic form of insurance fraud called "upcoding." Upcoding occurs when a healthcare provider misrepresents the nature and degree of services rendered to a patient, thereby deceiving the insurer into overpaying for the service actually provided.

United approached Envision with its findings this summer and attempted to reach a negotiated resolution. In the course of these talks, United provided Envision with a draft complaint it had prepared outlining Envision's systematic fraud. Rather than negotiate in good faith, Envision secretly took United's draft Complaint, reversed the allegations, and sued United. Much of Envision's complaint is plagiarized from the draft complaint that <u>United provided as part of settlement negotiations</u>, as well as a complaint filed against United by another emergency services

provider bringing claims completely different from those Envision has brought.[1] This Frankenstein monster stitched together from disparate pleadings is deficient on its face.

Among other things, Envision attempts to plead fraud and RICO claims without making any effort to explain how United made *any* misrepresentations or omissions of material information to Envision. Nor could it—United's decision whether to pay a specific claim does not occur until *after* that claim is submitted, not before. United never made *any* representation to Envision. Envision similarly brings a claim under Tennessee's prompt pay statute, despite the lack of a private cause of action under that statute. Envisions also alleges a civil conspiracy of one, in which United somehow conspired with itself—which is deficient as a matter of law. And Envision attempts to bring equitable claims to recover benefits Envision did not confer on United, as well as a contract claim based on Envision's alleged agreement to perform no more than its own pre-existing legal obligations. None of these claims bear scrutiny. Accordingly, United respectfully requests the Court dismiss them all.

## BACKGROUND

Envision is one of the country's largest conglomerates of physician groups and other emergency "healthcare-related services." Compl. ¶ 1. Its business and billing practices are currently the subject of intense academic,[2] congressional,[3] and regulatory scrutiny.[4] United is a

---

[1] *See* Compl., *UnitedHealthcare Insurance Company, et al. v. Envision Healthcare Corporation, et al.*, No. 22-cv-00697 (M.D. Tenn. Sept. 9, 2022); Compl., *Fremont Emergency Services, LTD. v. UnitedHealthcare Insurance Company et al.*, No. 2:22-cv-01118 (D. Nev. July 13, 2022).

[2] *See* Brown, *et al.*, USC-Brookings Schaeffer Initiative for Health Policy, *Private equity investment as a divining rod for market failure: Policy responses to harmful physician practice acquisitions*, (October 5, 2021), Available at: https://www.brookings.edu/essay/private-equity-investment-as-a-divining-rod-for-market-failure-policy-responses-to-harmful-physician-practice-acquisitions/ .

[3] *See* https://www.documentcloud.org/documents/4059832-Claire-McCaskill-Envision-Letter .

[4] *See* De Lombaerde, The Nashville Post, *Envision finalizes $31M DOJ settlement*, (December 19, 2017), Available at: https://www.nashvillepost.com/envision-finalizes-31m-doj-settlement/article_807b9230-6257-54c4-bb19-c14e61353a86.html .

2

health insurance company that both serves as a claim administrator for self-funded plans and offer fully insured plans. *See id.* at ¶¶ 2-3.

Up until December 31, 2020, Envision was contracted with United, and was "part of United's national network." *Id.* ¶ 28. But the parties were unable to reach an agreement as to rates of payment. *See id.* Indeed, Envision sought "more than triple the median rate" United pays other emergency room physicians at participating hospitals. *Id.* As a result, Envision went "out-of-network" with United as of December 31, 2020. *Id.* at ¶¶ 28-29.

As explained in United's complaint against Envision through a review of a medical records provided by Envision to support the claims billed to United, United learned that Envision "upcoded" claims it submitted to United. *See* Compl. ¶ 1, *UnitedHealthcare Insurance Company, et al. v. Envision Healthcare Corporation, et al.*, No. 22-cv-00697 (M.D. Tenn. Sept. 9, 2022). "Upcoding occurs when a healthcare provider submits a claim to an insurer utilizing an improper Current Procedural Terminology (CPT) code, misrepresenting the nature or degree of treatment rendered and exaggerating its complexity and expense,…thus deceiv[ing] the insurer into overpaying." *Id.* ¶ 2. United analyzed thousands of claims Envision submitted to United after the parties' contract terminated and found that well over half of those claims utilizing the most expensive CPT codes had been "upcoded," leading United to overpay Envision by millions of dollars. *See id.* ¶¶ 63-81. This upcoding is done by separate, non-medical Envision personnel "without involvement or oversight by…medical personnel" or the physicians actually rendering care to patients. *See id.* ¶¶ 41-42.

In its complaint, Envision contends that, after the parties' contract terminated, United "began to routinely and systematically deny claims related to emergency room services." *Id.* at ¶ 30. Envision alleges that United engages in the practice of "request[ing] medical records" upon

receiving a claim so that it can conduct a "pre-payment audit." *Id*. at ¶ 51. After such a review, United purportedly withholds payment on claims, notifying Envision that "the information submitted [by Envision] does not support [the] level of service." *Id*. at ¶ 55. Envision also alleges that United "targeted" Envision's claims with an algorithm, and failed to engage in a "good faith" review of those claims. Compl. ¶¶ 31, 142. Based on United' denial of its claims, Envision attempts to plead wide-ranging causes of action, including civil RICO claims, fraud, contract and quasi-contract claims, and civil conspiracy.

## LEGAL STANDARD

A complaint should be dismissed under Rule 12 where it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal under Rule 12(b)(6), "the plaintiff [must] provide 'enough facts to state a claim to relief that is plausible on its face.'" *Ind. State Dist. Council of Laborers & HOD Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 502 (6th Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Satisfying this obligation requires more than "labels and conclusions" or "blanket assertion[s] of entitlement to relief." *Twombly*, 550 U.S. 544, 555. The Sixth Circuit "has made clear that 'a legal conclusion couched as a factual allegation' need not be accepted as true on a motion to dismiss, and that a recitation of the elements of the cause of action is insufficient to state a claim for relief." *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (internal citations omitted).

Additionally, Rule 9(b) of the Federal Rules of Civil Procedure requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To comply with Rule 9(b), a plaintiff must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (quoting *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir.

4

2003)). "Where a complaint alleges 'a complex and far-reaching fraudulent scheme,' then that scheme must be pleaded with particularity and the complaint must also 'provide examples of specific' fraudulent conduct that are 'representative samples' of the scheme." *U.S. ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 444–45 (6th Cir. 2008) (quoting *Bledsoe*, 501 F.3d at 510). "This heightened pleading standard is designed to prevent fishing expeditions, to protect defendants' reputations from allegations of fraud, and to narrow potentially wide-ranging discovery to relevant matters." *Tennessee Extracts, LLC v. TGC Systems, LLC*, No. 3:21-cv-00879, 2022 WL 2111350, at *4 (M.D. Tenn. June 10, 2022) (internal citations omitted).

## ARGUMENT

### I.   Envision fails to state a claim under RICO.

Envision's RICO claim is largely plagiarized from United's own draft complaint against Envision. Envision's allegations track, paragraph by paragraph, the precise language of United's RICO claim against Envision, with the primary change being the substitution of United's name for that of Envision.[5] But United and Envision are very different companies, which offer different services, and which operate in different ways. As one might expect, the results of this legal equivalent of a Mad Lib make little sense.

In the Complaint United filed against Envision, United alleges an enterprise-in-fact between Envision and its affiliated medical groups. *See* Compl. ¶¶ 170-175; 189, *UnitedHealthcare Insurance Company, et al. v. Envision Healthcare Corporation, et al.*, No. 22-cv-00697 (M.D. Tenn. Sept. 9, 2022). In carrying out that enterprise, Envision sets unlawful policies for its medical groups and submits fraudulent claims to insurers, while Envision's affiliated medical groups generate medical records to support upcoded claims and order

---

[5] United has prepared a comparison chart for the Court's ease of reference, attached hereto **as Exhibit A**.

unnecessary tests and hospital admissions to paper over Envision's fraudulent claims. *See id.* ¶¶ 173-186; 192-195.

Because Envision cannot allege that United did anything similar to its own fraud, Envision revises these allegations to state simply that United conspired with unidentified "affiliates." *See, e.g.*, Compl. ¶¶ 113, 115. It is not clear who these affiliates are or what they do—Envision makes no effort to explain. Nor, for that matter, is it clear from Envision's complaint what *United* is alleged to have done that can support a RICO claim. The gravamen of Envision's complaint is simply that United denied insurance claims that Envision thought were proper. Strain as it might, Envision cannot convert that mundane activity into mail or wire fraud.

To plead a claim for violation of civil RICO under 18 U.S.C. § 1962(c) Envision must plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006). Here, Envision fails to plead any cognizable predicate acts.

### A.    Envision fails to allege a distinct enterprise separate from the defendants or the alleged predicate acts.

Envision fails to allege a distinct enterprise for three reasons: (1) it fails to allege the existence of an enterprise separate and distinct from a "person"; (2) it fails to allege that the enterprise is a coordinated or continuing unit; and (3) it fails to allege that the enterprise is separate and distinct from the alleged predicate racketeering acts themselves.

First, Envision does not adequately allege that United was part of an "enterprise," or "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). Envision alleges an enterprise of one, with United as the only named participant, ascribing every specific action to United. A corporation

6

"cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Begala v. PNC Bank, Ohio, Nat. Ass'n*, 214 F.3d 776, 781 (6th Cir. 2000).

Envision attempts to sidestep this requirement by breaking out the two United entities at issue in this litigation and alleging that UHCS carried out an enterprise with its own wholly owned subsidiary, UHCIC. (Compl. ¶ 113.) But "a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members," and "cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." *Begala*, 214 F.3d at 781; *see also Afshari v. Montana Black Gold*, No. 20-5362, 2020 WL 9217980, at *3 (6th Cir. Dec. 17, 2020) ("Black Gold Archery, LLC, is a subsidiary of, and owned by, Bowtech, Inc.; consequently, these two defendants do not constitute a distinct 'person' and 'enterprise'").

The only exception is when "the parent corporation uses the separately incorporated nature of its subsidiaries to perpetrate a fraudulent scheme." *In re ClassicStar Mare Lease Litigation*, 727 F.3d 473, 490. But there is no allegation that UHCS and UHCIC used the parent/subsidiary structure to "somehow facilitate[] [the] unlawful activity." *Bucklew v. Hawkins, Ash, Baptie & Co., LLP.*, 329 F.3d 923, 934 (7th Cir. 2003); *see also Brannon v. Boatmen's First Nat. Bank of Oklahoma*, 153 F.3d 1144, 1148 (10th Cir. 1998) (the plaintiff must plead that the alleged enterprise "somehow made it easier to commit or conceal the fraud of which the plaintiff complains.). Indeed, Envision does not distinguish at all between UHCS and UHCIC and their roles in the enterprise. And Envision fails to name any other member of the alleged enterprise, or to allege any action not collectively attributed to both UHCS and UHCIC. *See e.g.*, Compl. ¶ 114 ("[UHCS] and [UHCIC] established the Enterprise to reap windfall profits); *id*. ¶ 115 ("[UHCS]

and [UHCIC] set the Policy of withholding payment on high acuity claims without basis.); *id.* ¶ 116 ("[UHCS] and [UHCIC] . . . retained money that was due and owing to Envision").

Envision similarly fails to plead the existence of an enterprise "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function[ed] as a continuing unit." *Turkette*, 452 U.S. at 583. Where a plaintiff "allege[s] that the [defendants] combined to form an association-in-fact," a RICO claim fails if it does not "allege[] *any* activity that would show ongoing, coordinated behavior among the defendants that would constitute an association-in-fact." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir. 1993) (emphasis in original); *see also Begala*, 214 F.3d at 781–82 ("the complaint must contain facts suggesting that the behavior of the listed entities is 'coordinated' in such a way that they function as a 'continuing unit'"). Envision does not allege any facts about any allegedly coordinated acts of UHCS or UHCIC, or any of United's unspecified "affiliates," and certainly not "facts suggesting that the behavior of the listed entities is coordinated in such a way that they function as a continuing unit." *Pineda Transportation, LLC*, 2018 WL 2137760, at *5.

The Sixth Circuit's analysis in *Shields v. UNUMProvident Corp.* is instructive. 415 F. App'x 686, 691 (6th Cir. 2011). In *Shields*, the plaintiffs alleged that the defendant insurance company engaged in an enterprise consisting of its various subsidiaries, affiliates, wholly owned companies, and others. *Id.* at 687-690. The plaintiffs then alleged a "string of supposed racketeering activities in which the enterprise purportedly engages." *Id.* at 691. But plaintiffs failed to allege "facts suggesting that the behavior of the listed entities is coordinated in such a way that they function as a continuing unit," instead only alleging defendant's "bad faith claim handling." *Id.* Allegations that various subsidiaries and other entities were part of the enterprise, and that they all engaged in racketeering activities, was insufficient absent allegations of *how those various*

8

*persons coordinated* to create a functioning unit outside of the normal corporate structure. *See id.* Similarly, Envision alleges that UHCS and UHCIC formed an enterprise, and then alleges a "string of supposed racketeering activities in which the enterprise purportedly engages." But like in *Shields*, Envision fails to allege any facts about how the United entities coordinated beyond engaging in the alleged racketeering activities.

### B. Envision fails to allege predicate acts of racketeering.

Envision's RICO claim fails because it does not adequately allege any predicate acts of racketeering. Compl. ¶¶ 121-122. "The elements of mail and wire fraud are: (1) a scheme to defraud, and (2) use of the mails, or of an interstate electronic communication, respectively, in furtherance of the scheme." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Assoc.*, 176 F.3d 315, 322 (6th Cir. 1999). "[C]ivil RICO claims predicated on mail or wire fraud require plaintiffs to sufficiently allege a scheme to defraud and thus false representations made with knowledge or in reckless disregard of their falsity." *Brown v. Knoxville HMA Holdings*, *LLC*, 447 F. Supp. 3d 630, 650 (M.D. Tenn. 2020). A plaintiff must allege the false statements giving rise to liability "with particularity" and explain how "the plaintiff relied on [them]." *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999) (quoting *Kenty v. Bank One, N.A.*, 92 F.3d 384, 390 (6th Cir. 1996)).[6]

Here, Envision characterizes United's denial of its claims for reimbursement as somehow fraudulent. It asserts United "deceiv[ed] [Envision] into believing that treatment of Patients would result in reimbursement as required by State and Federal law," and to that end, "United made false representations and operated under the false pretense that it would make payment to providers for medically necessary treatment provided to its Patients." Compl. ¶¶ 75, 124. But Envision fails to

---

[6] To the extent Envision has some separate basis to claim that United is liable for use of interstate facilities to conduct unlawful activity (18 U.S.C. § 1952), it is completely obscure, and thus United focuses on mail and wire fraud.

9

provide *any* detail about the alleged misrepresentations made by United. Envision does not so much as hint at any specific false representations United made to deceive Envision to this effect, much less allege those statements with the particularity required by Rule 9(b). "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012) (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)). Envision's failure to do any of the foregoing requires dismissal. *See id.* at 405.

Similarly, to plead liability for mail and wire fraud, "allegations regarding an attempt to *acquire* money or property through fraud are required." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 822 (N.D. Cal. 2016). Both statutes apply, by their plain terms, to fraudulent schemes aimed at "*obtaining* money or property." 18 U.S.C.S. §§ 1341, 1343 (emphasis added). In contrast, Envision alleges only that United improperly refused to *pay its own money* to Envision. *See, e.g.*, Compl. ¶ 124. And Envision fails to allege that it had any cognizable property right in the sums United allegedly refused to pay. Envision was at all relevant times an out-of-network provider with United. *See id.* ¶ 29. Any legal right to payment from United for Envision's services therefore belonged to United's members (Envision's patients) pursuant to their insurance contracts with United, not to Envision itself.

Moreover, Envision makes clear that United did not somehow deceive it into performing services for United's members through false promises of payment. Indeed, Envision explains that it is "required by federal law to examine and provide stabilizing treatment to all individuals who present at [its] emergency departments . . . regardless of those individuals' insurance coverage or

10

ability to pay for medical care," and thus, Envision had no choice but to perform the services at issue. *Id*. ¶ 32. United plainly could not have fraudulently induced Envision to provide services Envision was already legally required to perform. In any event, obtaining these sorts of services under false pretenses would not fall within the ambit of the wire and mail fraud statutes. *See, e.g.*, *United States v. Sadler*, 750 F.3d 585, 592 (6th Cir. 2014) ("'Money,' 'property' and 'the intangible right of honest services' clearly and definitely fall within the fraud statutes' scope, but other interests . . . do not.") (citations omitted). Regardless of how Envision attempts to frame the issue, the mere denial of insurance claims simply does not constitute mail or wire fraud. *See, e.g.*, *Huang v. Presbyterian Church (U.S.A.)*, 346 F. Supp. 3d 961, 981 (E.D. Ky. 2018) (dismissing a RICO claim where "no allegation plausibly claim[ed] conduct indictable as mail or wire fraud").

### C. Envision fails to allege causation.

Envision similarly fails to show that any alleged act of mail or wire fraud caused its claimed injuries. "To allege a valid RICO claim . . . a plaintiff must show not only that the predicate act was a 'but for' cause of plaintiff's injuries, but also that it was a proximate cause." *Heinrich*, 668 F.3d at 404. With respect to causation, Envision alleges the "effect of the Enterprise's racketeering activity was to defraud Envision and other providers out of substantial sums of money by deceiving them into believing that treatment of Patients would result in reimbursement as required by State and Federal law." Compl. ¶ 124. But again, United did not make any representations or promises to induce Envision to provide treatment. Instead, as Envision itself alleges, Envision performed the services at issue here because *federal law required it to do so*. *Id*. ¶ 32.

It is therefore clear on the face of Envision's complaint that any scheme by United aimed at deceiving Envision into "believing that treatment of Patients would result in reimbursement," *id*. ¶ 124, did not cause Envision to perform the services at issue in this litigation. And it is difficult to see what impact United's alleged scheme could have *after* Envision performed those services.

11

Envision's own alleged "belie[f] that treatment of Patients would result in reimbursement," *id.*, did not impact United's ability to deny Envision's claims for services already performed. Envision makes no effort at all to explain how that alleged deception played any part in its injury. The fact that no deceptive scheme by United was a but-for or proximate cause of Envision's alleged injury presents independent grounds for dismissal. *See Heinrich*, 668 F.3d at 404.

## II.     Envision's claim for RICO conspiracy must also be dismissed.

For the reasons discussed above, Envision fails to plead a RICO claim. Because Envision does not adequately plead its substantive RICO claim, its RICO conspiracy claim also fails. *See Brown*, 447 F.Supp.3d at 644.

## III.     Envision's complaint fails to state a claim for fraud.

The defects that undermine Envision's RICO claim also doom its fraud claim. "[U]nder Tennessee law the elements of fraud or promissory fraud are as follows: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the misrepresentation's falsity— that the representation was made 'knowingly' or 'without belief in its truth,' or 'recklessly' without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact, or if the claim is based on promissory fraud, then the misrepresentation must embody a promise of future action without the present intention to carry out the promise." *Jack Tyler Eng'g Co. v. Colfax Corp.*, No. 10-cv-2373, 2011 WL 6372827, at *7 (W.D. Tenn. Dec. 20, 2011). Envision fails to plead any false statement or promise, and similarly fails to allege that it reasonably relied on any such statement or promise and thereby suffered damages.

In alleging fraud, Rule 9(b) requires that a plaintiff must "at a minimum, . . . 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'" *Coffey*

12

*v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quoting *Ballan v. Upjohn Co.*, 814 F. Supp. 1375, 1385 (W.D. Mich. 1992)). Envision contends that "United made false representations and operated under the false pretense that it would make payment to providers for medically necessary treatment provided to its Patients." Compl. ¶ 139. But as discussed above, Envision fails to identify any specific promise of future payment by United, or any false statement of past or present fact bearing on payment. Envision certainly does not plead any such promise or statement with the particularity required by Rule 9(b). This is fatal to Envision's fraud claim. *See, e.g.*, *Williams v. SunTrust Mortg., Inc.*, No. 3:12-CV-477, 2013 WL 1209623, at *15-16 (E.D. Tenn. Mar. 25, 2013) (dismissing a fraud claim for failure to identify specific false statements).

Even had Envision pled these statements with specificity, many of them could not support Envision's fraud claim. For example, Envision vaguely alleges that United made "requests for medical records associated with certain high acuity claims that the provision of records justifying the use of CPT code 99285," and in doing so, "intended for Envision to rely upon United's requests" for the proposition that compliance "would result in prompt payment of the claim." *Id.* ¶ 147. But a request for medical records is clearly neither a "misrepresentation [that] relates to an existing or past fact, or . . . [a] misrepresentation [that] embod[ies] a promise of future" payment. *Jack Tyler Eng'g Co.*, No. 10-cv-2373, 2011 WL 6372827, at *7. This has little apparent connection to Envision's claimed injury. The same is true of Envision's allegation that United somehow "falsely certifies each time that it denies a claim and withholds payment that it has conducted a good faith review of the claim and that the denial is made in good faith." *Id.* ¶ 142.

Moreover, Envision fails to plead that it reasonably relied on any of United's unspecified statements or promises. Again, as Envision itself explains, it performed the services at issue in this litigation not because United convinced Envision to do so with false promises of payment, but

13

because federal law required Envision to perform those services. Compl. ¶ 32. Indeed, some of United's unspecified statements were allegedly made only *after* Envision had performed the services at issue, *after* Envision had submitted claims to United, and even *after* United had denied those claims. *See id.* ¶¶ 142, 147. Envision's own belief that it would receive payment on the claims at issue had no bearing on its performance of the medical services at issue, nor on United's ability to deny claims for those services. It is therefore unsurprising that Envision's complaint is completely silent as to *how* Envision could have relied on any of United's unspecified statements to its detriment.

IV. **Envision's claim under the Tennessee Prompt Pay Act must be dismissed because the law does not provide a private cause of action.**

Envision's cause of action for violations of "Tennessee's Timely Reimbursement of Health Insurance Claims Act (the "Prompt Pay Act")" must be dismissed because this statute—Tenn. Code Ann. § 56–7–109, *et seq.*—does not confer a private right of action on providers. *See In re Managed Care Litigation*, 298 F.Supp.2d 1259, 1300 (S.D. Fla. 2003) (dismissing providers' claims under Tennessee's Prompt Pay Act against private payors because it does not confer a private right of action).

"It is the exclusive province of the legislature—not the courts—to create a statutory private right of action." *Affordable Construction Services, Inc. v. Auto-Owners Insurance Company*, 621 S.W.3d 693, 696 (Tenn. 2021). "To bring a cause of action to enforce a statutory duty, the plaintiff must show that the legislature intended for a private right of action to exist." *Id.* In instances when a statute does not expressly create a private right of action, a court may "examine the statute's structure and legislative history to determine whether the legislature intended to imply a private right of action." *Priority Waste Service, Inc. v. Santek Environmental, LLC*, No. E2020-01073-COA-R3-CV, 2021 WL 2652703, at *5 (Tenn. Ct. App. June 28, 2021).

14

Here, Tennessee's Prompt Pay Act does not provide any express right of action for private litigants. *See generally* Tenn. Code Ann. § 56–7–109, *et seq*. The Act's text and structure also negate any finding that a private right of action is implied because enforcement is exclusively delegated to the Commissioner of Commerce and Insurance. *See* Tenn. Code Ann. § 56–7–109(c) ("The commissioner shall ensure . . . that health insurance entities properly process and pay claims in accordance with this section."); *see also* Michael Flynn, THE CHECK ISN'T IN THE MAIL: THE INADEQUACY OF STATE PROMPT PAY STATUTES, 10 DePaul J. Health Care L. 397, 406 (2007) (noting Tennessee as one of the states that have a Prompt Pay law enforced by state insurance commissioners). The remedies available for violations of this statute are also solely limited to "administrative penalt[ies]" levied by the commissioner; for instance, "[i]f the commissioner finds a health insurance entity has failed during any calendar year to properly process and pay ninety-five percent (95%) of all clean claims received from all providers during that year in accordance with this section, the commissioner may levy an aggregate penalty up to ten thousand dollars ($10,000)." Tenn. Code Ann. § 56–7–109(c)(2). Further, "[e]xaminations to determine compliance" with Tennessee's Prompt Pay Act are restricted to "the commissioner's staff" or "impartial outside sources" that the commission has contracted with. Tenn. Code Ann. § 56–7–109(c)(6). There is no provision allowing private litigants to file an action. This statutory framework demonstrates that the Tennessee legislature considered enforcement of the Prompt Pay Act and exclusively delegated it to the Insurance Commission—not private litigants.

This finding is bolstered by interpretations of other states' prompt pay laws that are analogous to Tennessee's. For instance, the North Carolina Prompt Pay Act mirrors that of Tennessee, requiring insurers to issue payment within 30 days of a "clean claim" being submitted and imposing similar interest-based penalties for claims that are not paid within that time. *See* N.C.

15

Gen. Stat. § 58–3–225. But because the Act "specifically provides detailed enforcement procedures for the Commissioner of Insurance, and no such provisions for [private] claimants[,]" courts have concluded that "the North Carolina General Assembly did not intend to create a private right of action." *Kearney v. Blue Cross and Blue Shield of North Carolina*, 233 F.Supp.3d 496, 506 (M.D. N.C. 2017) (dismissing private litigant's North Carolina Prompt Pay Act claim because the statute does not provide for a private right of action). This Court should hold the same regarding Tennessee's statute.

## V. Envision's civil conspiracy claim fails as a matter of law.

Envision's cause of action for civil conspiracy, *see* Compl. ¶¶ 165-182, fails for two independent reasons.

### A. There can be no conspiracy without an actionable underlying tort.

"A claim for civil conspiracy requires an underlying predicate tort allegedly committed pursuant to the conspiracy." *Lane v. Becker*, 334 S.W.3d 756, 763 (Tenn. Ct. App. 2010) (citing *Watson's Carpet & Floor Coverings, Inc. v. McCormick*, 247 S.W.3d 169, 180 (Tenn. Ct. App. 2007)). "Conspiracy, standing alone, is not actionable where the underlying tort is not actionable." *Id.*; *see also Greene v. Brown & Williamson Tobacco Corp.*, 72 F.Supp.2d 882, 893 (W.D. Tenn. 1999) ("Defendant is correct that conspiracy requires underlying wrongful conduct and that, standing alone, conspiracy cannot sustain a cause of action").

Here, Envision expressly predicates its civil conspiracy claim on "the fraud alleged in Count III and violation of the Prompt Pay Act alleged in Count IV of [the] Complaint." (Compl. ¶ 175). But as discussed above, both causes of action fail as a matter of law. With no viable freestanding tort to support it, Envision's civil conspiracy claim cannot survive. *See Lane*, 334 S.W.3d 756 ("Because the claims underlying the allegations for civil conspiracy fail, the conspiracy claim must also fail.").

16

**B.      United cannot conspire with itself.**

A claim for civil conspiracy requires "a common design between two or more persons." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 38 (Tenn. Ct. App. 2006). Accordingly, the Tennessee Supreme Court has held "that there can be no actionable claim of conspiracy where the conspiratorial conduct alleged is essentially a single act by a single corporation acting through its officers, directors, employees, and other agents, each acting within the scope of his or her employment." *Trau-Med of America, Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 703–04 (Tenn. 2002). "Because of this intracorporate conspiracy immunity doctrine, proof of the existence of a conspiracy must be found, if at all, in conduct between defendants and some outside third party." *Shipwash v. United Airlines, Inc.*, 28 F.Supp.3d 740, 749 (E.D. Tenn. 2014).

Courts within the Sixth Circuit, and elsewhere, have consistently held across different legal contexts that "a parent corporation and its wholly owned subsidiary" and "two subsidiaries wholly owned by the same parent corporation are legally incapable of conspiring with one another." *Advanced Health-Care Services, Inc. v. Radford Community Hosp.*, 910 F.2d 139, 146 (4th Cir. 1990); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross and Blue Shield*, 552 F.3d 430, 435 (6th Cir. 2008) (noting that a "sister relationship" between the Defendants "makes them incapable, as a matter of law, of conspiring"); *Moore v. Auto Club Services*, 2022 WL 2865840, at *14 (E.D. Mich. July 20, 2022) ("Defendants, as part of the same corporate family, cannot be liable of conspiracy where there is no third-party involved."); *Gucci v. Gucci Shops, Inc.*, 651 F. Supp. 194, 197 (S.D.N.Y.1986) (finding two corporations "under common ownership" are "incapable of conspiring with each other as a matter of law").

In this case, Envision has alleged a conspiracy between "United HealthCare Services, Inc. and UnitedHealthcare Insurance Company, among themselves and with their interested affiliates." (Compl. ¶¶ 167–170). But UnitedHealthcare Insurance Company is merely am indirect subsidiary

17

of United HealthCare Services, Inc. *See* ECF Nos. 20 & 21. United HealthCare Services, Inc. and UnitedHealthcare Insurance Company—as entities of the same corporate family—are unable to conspire with one another as a matter of law. Without any allegations that United HealthCare Services, Inc. and UnitedHealthcare Insurance Company conspired with "any outside third party," *Shipwash*, 28 F.Supp.3d at 749, Envision's conspiracy claim must be dismissed.

## VI. Envision's unjust enrichment and quantum meruit claims must be dismissed because Envision did not confer any benefits on United.

Envision's claims for unjust enrichment and quantum meruit, *see* Compl. ¶¶ 183-189; 206-213, are "essentially the same" under Tennessee law. *MACTEC, Inc. v. Bechtel Jacobs Co., LLC*, No. 3:05-cv-340, 2007 WL 1891244, at *1 (E.D. Tenn. June 28, 2007). Both must be dismissed for a shared reason.

Both theories of recovery require a showing that Envision conferred a benefit on United. Indeed, "[t]he theory of unjust enrichment is based on the principle that a party who receives a benefit that he or she desires, under circumstances rendering retention of the benefit without providing compensation inequitable, must compensate the provider of the benefit." *Cole v. Caruso*, 2018 WL 1391625, at *3 (Tenn. Ct. App. March 20, 2018) (internal citations omitted). Accordingly, a *prima facie* element is a showing of "[a] benefit conferred upon the defendant by the plaintiff." *Id*. (quoting *Freeman Indus., LLC. V. Eastman Chem. Co.*, 172 S.W.3d 512, 525 (Tenn. 2005)). Similarly, [l]iability under quantum meruit is based on a legally implied promise to pay a reasonable amount for goods or services received." *Castelli v. Lien*, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995) (citing *John J. Heirigs Constr. Co. v. Exide*, 709 S.W.2d 604, 607 (Tenn. Ct. App. 1986)). Therefore, a plaintiff "must prove that it provided valuable goods and services" and that the defendant "must have received the goods and services." *Id*; *see also id*. ("quantum meruit recoveries are limited to the actual value of the goods or services").

18

Here, Envision does not plead that it provided any benefits, goods, or services to United. Instead, the complaint makes clear that Envision provided "emergency medical services *to Patients*." (Compl. ¶¶ 186; 208) (emphasis added). "It is counterintuitive to say that services provided to an insured are also provided to its insurer. The insurance company derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit." *Travelers Indem. Co. of Connecticut v. Losco Group, Inc.*, 150 F.Supp.2d 556, 563 (S.D.N.Y. 2001). While United's insureds may have received emergency medical services, United itself only received an obligation to pay claims. This financial liability is the opposite of a benefit. *See Mountain View Surgical Center v. Cigna Health Corp.*, 2015 WL 519066, at *4 (C.D. Cal. February 9, 2015) (dismissing an unjust enrichment claim because plaintiff failed to plead "how provision of medical services to [an insurer's] insureds conferred an economic benefit on [the insurer] itself"); *Angelina Emergency Med. Assocs. PA v. Health Care Serv. Corp.*, 506 F. Supp. 3d 425, 432 (N.D. Tex. 2020) ("Recovery in quantum meruit cannot be had from an insurer based on services rendered to an insured, because those services aren't directed to or for the benefit of the insurer."); *see also Valley Health System LLC v. Aetna Health*, *Inc.*, 2016 WL 3536519, at *4 (D. Nev. June 28, 2016) (dismissing an unjust enrichment claim where the plaintiff "failed to identify any way in which [an insurer] ha[d] been enriched independently of the benefit its members received"); *Patel v. Aetna*, No. 2:17-cv-78, 2018 WL 6574734, at *10-11 (S.D. Ohio Dec. 12, 2018) (dismissing an unjust enrichment claim against an insurer because based on "services were provided to [a patient]," as those services "would not confer a benefit on [the insurer]."); *Adventist Health Sys./Sunbelt Inc. v. Medical Sav. Ins. Co.*, 2004 WL 6225293, at *6 (M.D. Fla. Mar. 8, 2004) (rejecting a provider's unjust enrichment claim against an insurer because "as a matter of common sense, the benefits of healthcare treatment flow

19

to patients, not insurance companies"); *GVB MD v. Aetna Health Inc.*, 2019 WL 6130825, at \*6 (S.D. Fla. November 19, 2019) (collecting cases).

Because the only benefit conferred by Envision was to United's insureds, as opposed to United itself, Envision's unjust enrichment and quantum meruit claims fail as a matter of law.

## VII. Envision's breach of implied-in-fact contract claim fails.

A contract implied in fact is "one that arises under circumstances which show mutual intent or assent to contract." *Thompson v. Hensley*, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003). "[T]he only material difference between a typical contract and a contract implied in fact is the lack of a memorialization of the contract." *Faber v. Ciox Health*, LLC, 331 F.Supp.3d 767, 782 (W.D. Tenn. 2018). Therefore, just like a typical contract, "in order for a contract implied in fact to be enforceable, it must be supported by mutual assent, consideration, and lawful purpose." *Id*. Envision fails to plead any of these elements.

*First*, "a contract implied in fact must embody all the elements of an express contract, including an actual agreement between the parties." *Conner v. Hardee's Food Systems, Inc.*, 65 Fed. Appx. 19, 24 (6th Cir. 2003). Envision's complaint does not plausibly plead a 'meeting of the minds' between itself and United. To the contrary, Envision alleges that it "could *not* contract with United" and that the "[p]arties have *yet* to reach a new agreement." (Compl. ¶ 29) (emphasis added); *see also Bristol Anesthesia Services, P.C. v. Carilion Clinic Medicare Resources, LLC*, 2018 WL 1512932, at \*7 (E.D. Tenn. March 26, 2018) (finding the parties unsuccessful "attempt[] to negotiate a contract" as "indicat[ing] that the parties did not manifest mutual assent necessary to find that an implied-in-fact contract existed between the parties").

Envision also contends that "the parties' conduct and respective undertaking of obligations concerning emergency medical services provided by Envision to Patients, the parties implicitly agreed . . . that United would reimburse Envision for out-of-network claims . . . in accordance with

20

the rates [that] United pays for other substantially identical claims." (*Id*. ¶ 197). This is entirely "a legal conclusion couched as a factual allegation" that the Court is "not bound to accept." *TJM 64, Inc. v. Harris*, 526 F.Supp.3d 331, 335 (W.D. Tenn. 2021) (citing *Twombly*, 550 U.S. at 555). There is no explanation of what the parties' "conduct" or "undertaking of obligations" was, nor how the parties have come to "implicitly agree."

*Second*, "an implied-in-fact contract must be supported by . . . consideration." *Cannon v. Citicorp Credit Services, Inc.*, 2014 WL 1267279, at *2 (E.D. Tenn. March 26, 2014). Envision claims that it provided consideration to United by performing emergency medical services for United members. *See*, *e.g.*, Compl. ¶ 199. But as Envision itself repeatedly acknowledges, Envision had a preexisting "obligat[ion] under federal and Tennessee law to provide emergency medical services to all patients presenting at the emergency departments it staffs, including United Patients." Compl. ¶ 191. "[A] promise to perform what one is already legally obligated to do is not a valuable consideration." *Mac'Kie v. Wal-Mart Stores*, 943 F. Supp. 916, 923 (E.D. Tenn. 1996) (quoting *Pearson v. Garrett Financial Services, Inc.*, 849 S.W.2d 776, 778 (Tenn. Ct. App. 1992)). Envision did not provide consideration to United by complying with its own legal obligations.

*Third*, implied-in-fact contracts "must be sufficiently definite to be enforced." *Faber v. Ciox Health, LLC*, 331 F.Supp.3d 767, 783 (W.D. Tenn. 2018). Envision contends that the "terms" of this implied-in-fact contract required United to "reimburse Envision at rates, at a minimum, equivalent to the reasonable value of the professional emergency medical services provided by Envision." (Compl. ¶¶ 198-200; 202). Tennessee federal courts have rejected similar "reasonable price" arguments. For example, in *Faber v. Ciox Health, LLC*, the plaintiffs requested documents from a medical record provider and were in turn charged "excessive rates." 331 F.Supp.3d at 773-776. For their breach of implied contract claim, the plaintiffs contended that defendants had agreed

to only charge a "reasonable price" for the records. *Id*. at 782. The Court emphasized that "[i]ndefiniteness regarding an essential element of a contract 'may prevent the creation of an enforceable contract.'" *Id*. at 783 (citing *Doe v. HCA Health Servs. of Tenn.*, 46 S.W.3d 191, 196 (Tenn. 2001)). Based on "no indication of a price term" between the parties, the Court was not able to "adequately perceive and enforce" the plaintiffs' contract and thus dismissed the claim because the plaintiff failed to plead an "essential element[] of a contract." *Id*. Here too, Envision fails to explain what United agreed to pay or any other term demonstrating a sufficiently definite agreement to constitute a legally binding contract.

## VIII. Envision's state law claim based on assignment must be dismissed as preempted by ERISA.

Counts III through VIII of Envision's complaint are all predicated on state law causes of action—including fraud, violations of Tennessee's Timely Reimbursement of Health Insurance Claims Act, civil conspiracy, unjust enrichment, breach of implied-in-fact contract, and quantum meruit. *See* Compl. ¶¶ 137-213. To the extent these claims are based on an assignment of benefits by an individual covered under an ERISA-governed plan, those claims are preempted by ERISA. *See* 29 U.S.C. § 1001, *et seq*.

"There are two forms of ERISA preemption: express preemption (which applies broadly) and complete preemption (which applies narrowly)." *K.B. by and through Qassis v. Methodist Healthcare - Memphis Hosps.*, 929 F.3d 795, 799 (6th Cir. 2019). Express preemption is effectuated through ERISA's preemption clause—section 504—which covers "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *Gobeille v. Liberty Mut. Ins. Co.*, 136 S. Ct. 936, 943 (2016) (quoting 29 U.S.C. § 1144(a)). The Sixth Circuit has "emphasized the broad scope of ERISA preemption, noting that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Tinsley v. Gen. Motors Corp.*, 227

22

F.3d 700, 703 (6th Cir. 2000). Consequently, "state law claims for payment to beneficiaries or their assignees under ERISA-governed employee benefit plans are generally preempted." *Productive MD, LLC v. Aetna Health, Inc.*, 969 F.Supp.2d 901, 935 (M.D. Tenn. 2013).[7] As a result, all of Envision's state law claims must be dismissed to the extent they are premised on an assignment of benefits from an ERISA-governed plan.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss Envision's complaint in its entirety.

---

[7] This includes Envision's claims under Tennessee's Prompt Pay Act, Tenn. Code Ann. § 56–7–109. *See Select Specialty Hospital-Memphis, Inc.*, 2020 WL 4275264 at *14 (finding "providers' Prompt Pay Act claims to be preempted by ERISA."); *Productive MD*, 969 F. Supp. 2d at 938 ("the court finds that the Prompt Pay Act claims are preempted by ERISA relative to the ERISA-governed claims for payment"); *SLF No. 1, LLC v. United Healthcare Services Inc.*, 2014 WL 518222, at *3 (M.D. Tenn. February 7, 2014) (finding preempted a Prompt Pay Act claim brought by a provider).

23

Dated:  November 4, 2022

Respectfully submitted,

**PAINE, TARWATER & BICKERS, LLP**

_/s/ Michael J. King_

Michael J. King (BPR #015523)
mjk@painebickers.com
Dwight E. Tarwater (BPR #007244)
det@painetarwater.com
900 South Gay Street, Suite 2200
Knoxville, Tennessee 37902-1821
Telephone: (865) 525-0880

and

**ROBINS KAPLAN LLP**

Jeffrey S. Gleason (*pro hac vice* pending)
jgleason@robinskaplan.com
Jamie R. Kurtz (*pro hac vice* pending)
jkurtz@robinskaplan.com
Nathaniel J. Moore (*pro hac vice* pending)
nmoore@robinakplan.com
Charley C. Gokey (*pro hac vice* pending)
cgokey@robinskaplan.com
2800 LaSalle Plaza, 800 LaSalle Avenue
Minneapolis, MN 55402–2015
T: (612) 349–8500

and

Paul D. Weller (*pro hac vice* pending)
pweller@robinskaplan.com
Gregory S. Voshell (*pro hac vice* pending)
gvoshell@robinskaplan.com
900 Third Avenue, Suite 11900
New York, New York 10022
T: (212) 980-7400

*Counsel for United Healthcare Services, Inc.*
*and UnitedHealthcare Insurance Company*

24

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the **4th day of November, 2022**, I electronically filed a true and correct copy of the following:

- **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

with the Clerk of Court for the United States District Court for the Middle District of Tennessee via the Court's CM/ECF system, which was authorized to send notification of such filing and a copy of the filing to the following counsel of record:

**Kevin T. Elkins**
**Jeremy Oliver**
EPSTEIN BECKER & GREEN P.C.
1222 Demonbreun St., Suite 1400
Nashville, TN 37203
kelkins@ebglaw.com

**Anthony Argiropoulos**
**Eric W. Moran**
**Thomas Kane**
**William Gibson**
EPSTEIN BECKER & GREEN P.C.
150 College Road West, Suite 301
Princeton, New Jersey 08540
AArgiropoulos@ebglaw.com
EMoran@ebglaw.com
Tkane@ebglaw.com
WGibson@ebglaw.com

      */s/Michael J. King*
      *Counsel for United HealthCare Services,*
      *Inc. and UnitedHealthcare Insurance*
      *Company*

25